# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RAMIRO ALCALA, as Personal
Representative of the ESTATE OF
DIEGO EGUINO-ALCALA, deceased,

      Plaintiff,

    vs.                                              No. 2:22-cv-755-WJ-GBW

DEPUTY SHERIFF ARTURO ORTEGA,
BOARD OF COUNTY COMMISSIONERS,
OF THE COUNTY OF DONA ANA,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S THIRD AMENDED COMPLAINT

**THIS MATTER** is before the Court on Defendant Board of County Commissioners of the County of Doña Ana's ("the County") Rule 12(b)(6) Motion to Dismiss Count III of Plaintiff's Third Amended Complaint (Doc. 5). This case arises out of Plaintiff Ramiro Alcala's claim that Doña Ana Sheriff's Deputy Arturo Ortega wrongfully shot and killed decedent Diego Eguino-Alcala after he fled on foot from police. Plaintiff alleges Deputy Ortega was not wearing a body-worn camera in violation of New Mexico law. Specifically, Plaintiff's Count III asserts the County is liable for failing to adopt policies mandating the use of body-worn cameras by its law enforcement officers while on duty, as required by N.M.S.A. 1978 § 29-1-18(A). Doc. 1-1 at 11. The County makes two arguments in support of its Motion: (1) Section 29-1-18 creates no private right of action against law enforcement agencies; and (2) the County is immune from § 29-1-18 claims under the New Mexico Torts Claims Act ("NMTCA"). Doc. 5 at 1. The Court finds that

1

Plaintiff may initiate an action under the NMTCA for a violation of § 29-1-18, but the NMTCA does not waive the County's governmental immunity from Plaintiff's direct claim against the County. However, Plaintiff may have a viable claim against the County under a vicarious liability theory, subject to the waiver of immunity contained in N.M.S.A. 1978 § 41-4-12. Accordingly, the Court grants Plaintiff leave to amend Count III. Defendant's Motion to Dismiss Count III is **DENIED**.

## FACTUAL BACKGROUND

For the purposes of this Motion, the Court relies upon the following facts presented by Plaintiff, the non-moving party, in his Third Amended Complaint.

On the morning of October 4, 2020, decedent Diego Eguino-Alcala was involved in a serious vehicle collision on South Main Street in Las Cruces, New Mexico. Doc. 1-1 at 4. Eguino-Alcala's airbags deployed and he lost consciousness. *Id*. Several bystanders, including off-duty Doña Ana County Sheriff Kim Stewart, stopped to render aid while Eguino-Alcala was unconscious in the driver's seat of his car. *Id.* According to bystanders, Eguino-Alcala came to and exited his car. He was "off-balance, silent, [] disoriented, and repeatedly tried to stand." *Id*. Bystanders attempted to keep him on the ground for his safety. Eventually, Eguino-Alcala was able to stand up and walk around the crash site, still dazed from the crash. Bystanders reported Eguino-Alcala then walked around to his trunk, opened it, removed a shotgun, and "swung it around" in the direction of the crowd of bystanders. *Id*. The crowd dispersed, and witnesses reported Eguino-Alcala placed the shotgun back in his trunk. *Id*. Bystanders—including Sheriff Stewart—communicated updates to police dispatch throughout the encounter. *Id*.

Doña Ana County Sheriff's Deputy Arturo Ortega left his home to respond to the crash scene at approximately 10:05 a.m. Doc. 1-1 at 4. Four minutes later, while Ortega was in route to

the scene, dispatch reported that Eguino-Alcala had "pulled a rifle out of his vehicle." *Id.* at 5. One minute later, at approximately 10:10 a.m., dispatch reported that Eguino-Alcala had run from the crash site. *Id*. At 10:11 a.m., dispatch reported that Eguino-Alcala "had placed the rifle he had been seen holding back into his vehicle." *Id.* After this series of dispatches, Deputy Ortega arrived at the crash scene in his police cruiser and drove through the neighborhood where Eguino-Alcala was last seen. *Id.* Deputy Ortega located Eguino-Alcala running along Manso Avenue and pursued him in his vehicle. During the pursuit Deputy Ortega observed Eguino-Alcala remove his long sleeve shirt and throw it behind him, "leaving him in a tight-fitting tank and fitted jogger pants." *Id.*

After a brief pursuit in his police cruiser, Deputy Ortega pulled over on the side of the road and exited. Doc. 1-1 at 5. Deputy Ortega ordered Eguino-Alcala to stop, and Eguino-Alcala stopped running. *Id.* Eguino-Alcala, then stationary, "folded at his waist and rested his hands on his knees, catching his breath." *Id.* Deputy Ortega drew his firearm and walked toward Eguino-Alcala. As Deputy Ortega approached, he "began yelling contradictory commands for [Eguino-Alcala] to get on the ground and put his hands up." *Id.* "Suddenly, [Deputy] Ortega began shooting at [Eguino-Alcala] while [Eguino-Alcala] was still bent over at his waist." *Id.* At approximately the same time Deputy Ortega began shooting, Las Cruces Police Officer Jason Hayes arrived at the scene in his marked police cruiser. *Id*. at 6. Deputy Ortega fired nine shots. Two bullets struck Eguino-Alcala "in his right buttock, and one struck his right axilla." *Id*. Eguino-Alcala was unarmed, "had surrendered," and "had not threatened [Deputy] Ortega or Officer Hayes." *Id.* Eguino-Alcala died from his injuries. *Id.* at 2.

In April 2021, Ramiro Alcala initiated the instant action in New Mexico state court on behalf of the estate of decedent Diego Eguino-Alcala. Doc. 1-4. Plaintiff asserts five claims in his Third Amended Complaint: (1) battery against Deputy Ortega; (2) negligence resulting in a battery

3

against the County and Sheriff Stewart; (3) failure to comply with the statutory duty to adopt policies mandating body-worn cameras against the County and Sheriff Stewart; (4) excessive force in violation of the Fourth Amendment against Deputy Ortega; and (5) municipal liability under 42 U.S.C. § 1983 against the County and Sheriff Stewart. All three Defendants agreed to remove the case to federal court and filed a Notice of Removal. Doc. 1-1 at 7-13.

Jurisdiction in this Court is based on the Federal Question presented by Plaintiff's § 1983 claim in Count V. Doc. 1-8. Relevant to the instant motion, Plaintiff asserts his third claim under the New Mexico Tort Claims Act ("NMTCA"), N.M.S.A. 1978 § 41-4-1 *et seq.*, alleging Defendant Doña Ana County is vicariously liable for Deputy Ortega's failure to wear a body-worn camera as required by N.M.S.A. 1978 § 29-1-18. Doc. 1-1 at 11-12. The Court has supplemental federal jurisdiction over Plaintiff's third claim because it arises from the same controversy as Plaintiff's § 1983 claim. 28 U.S.C. § 1367.

## LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plaintiff's obligation to provide grounds for her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

4

In reviewing a motion to dismiss, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept as true legal conclusions, including any "legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, the Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The essential question is whether the plaintiff has nudged her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

In Count III, Plaintiff asserts Defendant Doña Ana County is liable for failure to comply with its statutory duties under N.M.S.A. 1978 § 29-1-18(A) to adopt policies mandating body-worn cameras and provide Deputy Ortega with a body-worn camera before his encounter with Eguino-Alcala. Plaintiff asserts the County had a duty "to require [Doña Ana County Sheriff's Office] peace officers who routinely interact with the public to wear a body-worn camera while on duty, and to adopt policies and procedures governing the use of body-worn cameras." Doc. 1-1 at 11. Plaintiff further asserts the County breached its duty "by not providing [Deputy] Ortega with a body-worn camera to use on October 4, 2020, and by failing to adopt policies and procedures by October 4, 2020 regarding use of body-worn cameras." *Id.* at 12. As a result of the County's breach, Plaintiff asserts he was deprived of valuable evidence relevant to his excessive force claim against Deputy Ortega. *Id.*

Defendant Doña Ana County moves to dismiss Plaintiff's claim for two reasons. First, the County argues § 29-1-18 provides no explicit or implicit right of action against law enforcement agencies, so Plaintiff may not bring a claim against the County for violating § 29-1-18(A). Second, the County argues the NMTCA contains no specific waiver of the County's tort immunity for claims brought under § 29-1-18(A). The Court addresses each argument in turn.

### I. Section 29-1-18 secures a right under New Mexico law that provides a basis for Plaintiff's cause of action.

Defendant Doña Ana County argues Plaintiff may not bring an action against the County for violating § 29-1-18(A) because the statute does not authorize a private right of action under the NMTCA. The Court disagrees. New Mexico employs a two-part test to determine whether a state statute authorizes a right of action under the NMTCA. The Court must ask: "(1) whether the legislation creates a right on the part of specific individuals; and (2) whether the legislative remedy explicitly or implicitly forecloses enforcement by private individuals through resort to [the NMTCA]." *California First Bank v. State*, 1990-NMSC-106, ¶ 34, 801 P.2d 646, 656. Section 29-1-18 satisfies both prongs of the *California First Bank* test. As such, a plaintiff may bring a cause of action in tort for breach of statutory duties imposed by § 29-1-18.

#### A. § 29-1-18 creates a public right.

Turning to the first question, a statute creates an individual right when it "create[s] a duty that accrues to the benefit of specific individuals." *California First Bank*, 1990-NMSC-106, ¶ 35 (citation omitted). The New Mexico Supreme Court has previously held four separate New Mexico state statutes create law enforcement duties to the public that satisfy the first prong of the *California First Bank* test. In *Schear v. Bd. Of County Com'rs of Bernalillo County*, the New Mexico Supreme Court held that N.M.S.A. § 29-1-1, a statute that requires law enforcement officers to investigate criminal law violations, file complaints, and cooperate with state

6

prosecutors, created a duty that supported a right of action in tort against officers who failed to investigate a reported assault. 1984-NMSC-079, ¶ ¶ 3, 20, 687 P.2d 728, 728, 733. In *California First Bank*, the New Mexico Supreme Court again held a DUI victim properly stated a tort claim against McKinley County for officers' alleged violation of § 29-1-1 when they failed to investigate a disturbance involving the DUI perpetrator shortly before the crash. 1990-NMSC-106, ¶ 37. Six years later, the New Mexico Supreme Court recognized a right of action pursuant to N.M.S.A. §§ 3-13-2, 4-37-4, and 4-41-2, which "generally direct officers to take steps necessary to prosecute suspected criminals, such as filing complaints against the suspects, bringing them before the courts, and assisting the prosecution." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.*, 1996-NMSC-021, ¶ 29-34, 916 P.2d 1313, 1322. The *Weinstein* court reasoned that the three statutes create duties for law enforcement officers that serve to "further public safety," thereby conferring rights to the public in satisfaction of the first prong of the *California First Bank* test. *Id.* at ¶ 34. Taken together, *Schear*, *California First Bank*, and *Weinstein* demonstrate the New Mexico Supreme Court's proclivity for recognizing a public right of action in tort against law enforcement officers who violate state statutory duties that serve to protect the public.

Under this framework, the Court finds that § 29-1-18 creates a public right satisfying the first prong of the *California First Bank* test. Section 29-1-18(A) creates a duty for law enforcement agencies to adopt and implement departmental policies mandating that officers use body-worn cameras for the duration of encounters with the public, and that those recordings be stored for 120 days. The statute reads, in relevant part:

> A. A law enforcement agency *shall require peace officers the agency employs and who routinely interact with the public to wear a body-worn camera while on duty*. Each law enforcement agency subject to the provisions of this section shall adopt policies and procedures governing the use of body-worn cameras, including:

> (1) *requiring activation of a body-worn camera whenever a peace officer is responding to a call for service* or at the initiation of any other law enforcement or investigative encounter between a peace officer and a member of the public;
> (2) *prohibiting deactivation of a body-worn camera until the conclusion of a law enforcement or investigative encounter*;
> (3) requiring that *any video recorded by a body-worn camera shall be retained by the law enforcement agency for not less than one hundred twenty days*;
> (4) establishing disciplinary rules for peace officers who:
>   (a) fail to operate a body-worn camera in accordance with law enforcement agency policies;
>   (b) intentionally manipulate a body-worn camera recording; or
>   (c) prematurely erase a body-worn camera recording in violation of law enforcement agency policies.
>
> B. Peace officers who fail to comply with the policies and procedures required to be adopted pursuant to Subsection A of this section shall be presumed to have acted in bad faith and shall be deemed liable for the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence.

N.M.S.A. 1978 § 29-1-18(A)-(B) (emphasis added). Further, § 29-1-18(B) presumes an officer acted in bad faith and is liable in tort for spoliation of evidence if he fails to comply with departmental policy adopted pursuant to § 29-1-18(A). Section 29-1-18(B)'s presumption reveals the legislature's intent for § 29-1-18 to benefit the public. In effect, taking together all the provisions of § 29-1-18, law enforcement must either record and retain body-worn camera video evidence—making it available to support a citizen's potential claim—or internally discipline noncompliant officers who face a presumption of liability in tort for evidence spoliation. The Court therefore believes § 29-1-18 creates an evidentiary right to body-worn camera video for members of the public who had an encounter with a peace officer, satisfying the first prong of the *California First Bank* test. 1990-NMSC-106, ¶ 35. *See Rorabeck v. County of McKinley, New Mexico*, 2003 WL 27384913, *6 (D.N.M. Oct. 16, 2003) (finding New Mexico's Fireworks Act, which requires sellers to obtain a permit and prohibits the sale of fireworks without a permit, "may create a property right" on the part of sellers holding permits in satisfaction of the first *California First*

*Bank* prong). In sum, § 29-1-18 "create[s] a duty" for law enforcement to record body-worn camera video "that accrues to the benefit" of public citizens engaged in encounters with peace officers. *California First Bank*, 1990-NMSC-106, ¶ 35.

### B.     § 29-1-18 does not foreclose enforcement under the NMTCA.

Having found that § 29-1-18 secures a right, the Court next asks whether the statute's remedy "implicitly forecloses enforcement by private individuals through resort to [the NMTCA]." *California First Bank v. State*, 1990-NMSC-106, ¶ 34. Section 29-1-18(B) sets forth the remedy for violations of § 29-1-18(A):

> B. Peace officers who fail to comply with the policies and procedures required to be adopted pursuant to Subsection A of this section shall be presumed to have acted in bad faith and *shall be deemed liable for the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence.*

N.M.S.A. 1978 § 29-1-18(B) (emphasis added). Section § 29-1-18 explicitly authorizes tort claims for spoilation of evidence against peace officers. By doing so, § 29-1-18 necessarily authorizes enforcement through the NMTCA because the NMTCA is the exclusive remedy for victims of torts committed by governmental entities and public employees in New Mexico. *See* N.M.S.A. 1978 § 41-4-17 ("The [NMTCA] shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived . . . and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity . . . whose act or omission gave rise to the suit or claim."). Because the statute specifically authorizes spoilation of evidence tort claims under the NMTCA, the Court finds that § 29-1-18 does not contain an explicit or implied foreclosure of a private right of action under the NMTCA. The Court notes that the Supreme Court of New Mexico has found NMTCA claims are not foreclosed "even when a statute provides that officials in violation of the statute are subject to

removal from office and the imposition of fines." *Rorabeck*, 2003 WL 27384913 at *6 (citing *Weinstein*, 1996-NMSC-021, ¶ 36).

## II. NMTCA Waiver of Immunity

The NMTCA grants immunity from tort liability for governmental entities and public employees acting within the scope of their duty unless immunity is waived by a provision in Sections 41-4-5 through 41-4-12. N.M.S.A. 1978 § 41-4-4(A). Plaintiff asserts the waiver of immunity for torts committed by law enforcement officers in § 41-4-12 applies in this case. The County contends that § 41-4-12 applies only to suits against individual law enforcement officers, not law enforcement agencies or municipalities, and thus Plaintiff's claim is barred under the NMTCA. The Court agrees with the County. However, the Court will grant Plaintiff leave to amend to pursue a *respondeat superior* claim against the County for Deputy Ortega's alleged violation of § 29-1-18.

Plaintiff's claim in Count III asserts the County alone is directly liable for breaching its statutory duties to adopt policies requiring body-worn cameras and to provide Deputy Ortega with a body-worn camera. Doc. 1-1 at 11-12. Although Plaintiff's complaint contains sufficient facts to suggest Deputy Ortega was a law enforcement officer employed by the county, acting in his official capacity during the encounter, Plaintiff does not assert that the County is vicariously liable for Deputy Ortega's alleged failure to wear a body-worn camera. Because Plaintiff pursues a direct claim against the County, he cannot rely upon the waiver of immunity granted to *law enforcement officers* in § 41-4-12. Section 41-4-12 waives tort immunity only when the defendant is "a public officer or employee vested by law with the power to maintain order, make arrests for crime or to detain persons suspected of or convicted of committing a crime . . . ." NMSA 1978 § 41-4-12. The New Mexico Supreme Court addressed this issue in *California First Bank* and held that, while


§ 41-4-12 does not waive immunity for direct claims against a county, does authorize claims when the action against the county is based on "vicarious liability for the acts of its sheriff deputies."

The Court concludes that Plaintiff's claim in Count III, as presented in Plaintiff's Third Amended Complaint, is barred by NMTCA's governmental immunity set forth in § 41-4-4(A). Plaintiff requested leave to amend to cure any pleading deficiencies in Count III. Doc. 10 at 6. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because Plaintiff pleaded facts that may support a vicarious liability claim against the County, the Court grants Plaintiff leave to amend Count III. The Court reserves ruling on the merits of Plaintiff's amended claim.

## CONCLUSION

For the reasons stated in this Opinion, Defendant Board of County Commissioners of the County of Doña Ana's Rule 12(b)(6) Motion to Dismiss Count III of Plaintiff's Third Amended Complaint (Doc. 5) is **DENIED**. Plaintiff is granted leave to amend Count III. The Court directs Plaintiff to file his amended complaint within thirty (30) days of the entry of this order.

**IT IS SO ORDERED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE