IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMIRO ALCALA, as Personal
Representative of the ESTATE OF
DIEGO EGUINO-ALCALA, deceased,

    Plaintiff,

v.                                                            Civ. No. 22-cv-755 WJ/GBW

DEPUTY SHERIFF ARTURO ORTEGA,
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF DOÑA ANA, and
KIMBERLY STEWART,

    Defendants.

## AMENDED[1] MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

**THIS MATTER** comes before the Court upon Defendants' Amended Motion and Memorandum in Support of Partial Summary Judgment and Qualified Immunity Against Counts I, II, and IV, filed March 1, 2023 **(Doc. 34)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED in part**.

## BACKGROUND

On October 3, 2022, Plaintiff as the personal representative of Mr. Eguino-Alcala's estate, filed a complaint in the Third Judicial District Court, County of Doña Ana, New Mexico, asserting

---

[1] On October 23, 2023, the Court entered its Memorandum Opinion and Order, dismissing the federal claim in Count IV and remanding all remaining claims to state court. On November 2, 2023, the Court held a status conference to determine if Count V also asserts a federal claim—thereby prohibiting remand to state court. Plaintiff and Defendant agreed that Count V is a § 1983 claim under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). Therefore, the Court withdraws its October 23, 2023, Memorandum Opinion and Order and substitutes this Amended Memorandum Opinion.

federal civil rights and state law tort claims against Defendants.[2] **Doc. 1-1**. Defendants removed the case to federal court on October 10, 2022. **Doc. 1**. At issue here are Plaintiff's claims that Defendant Ortega battered the decedent, the Board's negligence resulted in the battery, and Defendant Ortega violated the decedent's Fourth Amendment right to be free from excessive force. **Doc. 1-1 at 7–12**.

Specifically, Plaintiff's claims arise from the alleged violations of Diego Eguino-Alcala's constitutional rights when he was fatally shot by Defendant Ortega. Plaintiff alleges the use of deadly force against Diego was unconstitutional and the result of unconstitutional practices and policies put in place by Defendant Board of County Commissioners of the County of Doña Ana. Plaintiff additionally brings claims for the County's failure to enact polices and ensure officers, including Defendant Ortega, wore body worn cameras as required by law.

Defendants assert they are entitled to qualified immunity in their Motion (**Doc. 34**). Plaintiff filed a Response[3] (**Doc. 46**) opposing partial summary judgment and argued Defendants are not entitled to qualified immunity.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "no genuine dispute" exists about any "material fact." Fed. R. Civ. P. 56; *see also Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). After the movant demonstrates "the absence of a genuine issue of material fact," the burden shifts to "the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). "A disputed fact is 'material'

---

[2] Defendant Stewart was dismissed from this action by stipulation on October 13, 2022. *See* **Doc. 4**.
[3] Although a somewhat trivial matter, the Court granted the Unopposed Motion to Enlarge Page Limits (**Doc. 47**) on April 20, 2022, but the Plaintiff filed their Response on April 14, 2022. Plaintiff's Response comprises 36 pages instead of the ordered limit of 35. Plaintiff is reminded that he is required to abide by the rules governing federal and local civil procedure.

if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation omitted).

To defeat summary judgment, the nonmovant must set forth specific facts that would be admissible in evidence from which "a rational trier of fact could find for the nonmovant." *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 917 (10th Cir. 2015) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). When opposing summary judgment, the nonmoving party cannot rest on mere allegations, but "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation omitted). If the nonmovant does not dispute the movant's statement of undisputed facts, then those facts are deemed admitted for purposes of the summary judgment motion. *Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006). Likewise, "a complete failure of proof concerning an essential element of the nonmoving party's case" will entitle the movant to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In reviewing a motion for summary judgment, the Court "construe[s] the facts in the light most favorable to the nonmovant and . . . draw[s] all reasonable inferences in its favor." *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) (quoting *Est. of Beauford*, 35 F.4th at 1261). The Court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *see also Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005).

Motions for summary judgment as applied to qualified immunity cases are different in kind. *Est. of Beauford*, 35 F.4th at 1261 (citing cases). This is because the very nature of qualified

3

immunity is "unique." *Nelson v. McMullen*, 207 F.3d 1202, 1205–06 (10th Cir. 2000).

Where, as here, a Defendant asserts qualified immunity, this affirmative defense "creates a presumption that [the defendant is] immune from suit." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). By asserting qualified immunity as summary judgment, "the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct." *Est. of Beauford*, 35 F.4th at 1261 (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). Ultimately, the Defendant does not bear the "traditional burden of the movant for summary judgment" unless the Plaintiff is able to satisfy this two-part test. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018) (quoting *Nelson*, 207 F.3d at 1206).

## LEGAL STANDARD FOR QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whenever a Defendant asserts the qualified immunity defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis in original) (internal quotation marks omitted); *see also Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022).

The requirement that the right be "clearly established" is a "demanding standard." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the particular conduct is clearly established. In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). In short, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The required analysis is not a "scavenger hunt for prior cases with precisely the same facts." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Instead, the state of the law must be clearly established—insofar as it provides "fair warning" to the Defendants that their alleged conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Here, the Plaintiff alleges the Defendants violated Mr. Eguino-Alcala's constitutional rights in two ways: (1) by shooting him to death without a reasonable basis to believe Mr. Eguino-Alcala was armed or dangerous, and (2) by using deadly force against an unarmed person who posed no immediate threat. **Doc. 46 at 17**. The Court considers each issue in turn.

## UNDISPUTED MATERIAL FACTS[4]

The following facts are either not disputed by Plaintiff or, following the Court's review of the evidence and pleadings submitted, have been deemed undisputed. If the latter, then the Court has explained how the Plaintiff did not "bring forward specific facts showing a genuine issue for trial," but instead merely levied arguments and allegations. *See Kannady*, 590 F.3d at 1169.

On October 4, 2020, Diego Eguino-Alcala was involved in a vehicle collision in Las

---

[4] References to supporting exhibits are included in the briefs, so for ease of reading they have been omitted here.

Cruces, New Mexico. **Doc. 34 at 3, ¶ 1**. At around 10:04 am, 911 received a call regarding the collision. *Id.* **at ¶ 2**. Dispatch received a report that a male retrieved a rifle from the trunk of his vehicle. *Id.* **at ¶ 3**.

Law enforcement reports relayed "the subject had pulled out a 10-80, or the general code for a firearm . . . and that the subject had pointed the 10-80 at a crowd." **Doc. 34 at 3, ¶ 4**. Plaintiff disputes the implication that Mr. Eguino-Alcala pointed the rifle with an intent to harm—relying on language that it was "unknown" if he was threating anyone. **Doc. 46 at 2, ¶ RMF 4**. This is immaterial. So too is Plaintiff's dispute regarding what Deputy Ortega heard. *Id*. Plaintiff acknowledges that Deputy Ortega received a report regarding a suspect seen with a rifle. *Id.* **at 3**. Fact 4 is undisputed. **Doc. 34 at 3, ¶ 4**.

Plaintiff disputes Defendants' statements in Facts 5 and 6 with immaterial parsing of language. Plaintiff does not dispute "a single call reporting [they] had lost sight of [Mr. Eguino-Alcala]." **Doc. 46 at 4, ¶ RMF 5**. As for Fact 6, Plaintiff does not dispute the dispatch report; but instead takes issue with the veracity of the report. **Doc. 46 at 4, ¶ RMF 6**. The fact that dispatch reversed the color of Mr. Eguino-Alcala's pants and shirt is clearly immaterial. *See Anderson*, 477 U.S. at 248 (explaining a fact is material if it might affect the outcome of the suit). Accordingly, Facts 5 and 6 are undisputed. **Doc. 34 at 3, ¶¶ 5–6**.

At 10:12 am, dispatch received a call explaining the "shotgun was in a silver vehicle." **Doc. 34 at 3, ¶ 7**. And, in Fact 8, Plaintiff does not dispute the report—instead merely refuting the accuracy of the report. **Doc. 46 at 5, ¶ RMF 8**. This is immaterial. What is material is the fact the dispatch report was made because that is what informed police action. Likewise, the dispute about what Mr. Eguino-Alcala was wearing in Fact 9 is immaterial. Plaintiff does not dispute the existence of the call. **Doc. 46 at 5, ¶ RMF 9**.

Deputy Ortega was at home on his lunch break when he heard dispatch call about the motor vehicle accident. He then drove to the vicinity of South Main where he saw a man shouting and pointing north toward Bell Street. Deputy Ortega then turned around and drove onto Bell Street, the Oak Street, and then Union. **Doc. 34 at 3, ¶¶ 10–12**. While on Union, Deputy Ortega saw Mr. Eguino-Alcala running west toward Oak. **Doc. 34 at 4, ¶ 13**. Deputy Ortega then observed Mr. Eguino-Alcala "dart across Oak and onto cross street Manso Street, that intersects with Main." *Id.* **at ¶ 14**. Plaintiff disputes these facts because Defendant Ortega's testimony is "unreliable." **Doc. 46 at 6, ¶¶ RMF 13–14**. When examining the underlying facts of the case, the Court may not make credibility determinations or weigh the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But, here, assessing credibility is the Plaintiff's only basis for disputing Facts 13 and 14. Because Plaintiff failed to offer evidence disputing these facts, they are deemed undisputed.

Next, Deputy Ortega observed Mr. Eguino-Alcala pull the driver of an ambulance before running west toward Main. **Doc. 34 at 5, ¶ 15**. Plaintiff disputes Deputy Ortega's ability to see the altercation. **Doc. 46 at 6–7, ¶ RMF 15**. In refuting this fact, Plaintiff references a Google Maps street view as well as a screenshot of Deputy Ortega's dash camera. *Id.* Disputing Deputy Ortega's personal observations with differing photographs showing different vantage points is a conclusory opinion that calls for speculation. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Defendants' Reply (**Doc. 57**) keenly observes that Plaintiff's Response (**Doc. 46**) does not dispute the underlying exhibits supporting the fact Deputy Ortega saw Mr. Eguino-Alcala attempting to pull an EMT out of the driver's seat of an ambulance.

It is undisputed that Deputy Ortega "pulled up behind Mr. Eguino-Alcala, got out of the vehicle, and commanded [him] to stop with [Deputy] Ortega's service firearm aimed at him." **Doc.**

7

**34 at 5, ¶ 16**; **Doc. 46 at 7, ¶ RMF 16**. Defendants and Plaintiff also agree that Mr. Eguino-Alcala was east of the intersection of Main and Manso. *Id*. What Plaintiff disputes, however, is the distance between Deputy Ortega and Mr. Eguino-Alcala. **Doc. 46 at 7, ¶ RMF 17**. Whether the distance between Deputy Ortega and Mr. Eguino-Alcala was ten feet or thirty feet is disputed; but such an issue is not a material fact. *See Est. of Valverde v. Dodge*, 967 F.3d 1049, 1061 (10th Cir. 2020) (citing *Est. of Larsen ex. rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260–61 (10th Cir. 2008)). Even assuming the distance was 30 feet, this is but one fact in a non-exhaustive list of assessing the degree of threat facing an officer. *Est. of Larsen*, 511 F.3d at 1260. The Tenth Circuit has established quite clearly that a discrepancy in distance is immaterial when the suspect has a gun versus a knife. *See Tenorio v. Pitzer*, 802 F.3d 1160, 1165–66 (10th Cir. 2015); *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 735–37 (10th Cir. 1993); *Walker*, 451 F.3d at 1160. At any rate, the distance between Deputy Ortega and Mr. Eguino-Alcala is not dispositive of the substantive inquiry which considers whether the officers' conduct was excessive under the Fourteenth Amendment.

The fact Deputy Ortega shouted "multiple commands" at Mr. Eguino-Alcala is undisputed. **Doc. 34 at 5, ¶ 18**; **Doc. 46 at 7, ¶ RMF 18**. Whether or not the commands were "consistent" is immaterial if the commands to "put your hands up" and "get on the ground" were given. As to the actual giving of the commands, both Plaintiff and Defendants agree these multiple commands were given. **Doc. 46 at 7, ¶ RMF 18; Doc. 57 at 7, ¶ 11**. Mr. Eguino-Alcala then leaned over with his "right hand out of view in or near his waistband." **Doc. 34 at 5, ¶ 19**. Plaintiff counters that his hand was not "in" his waistband—but again, this is a distinction without a difference. **Doc. 46 at 7, ¶ RMF 19**. This is not a "dispute" at all, but merely a quibble with semantics. To the extent the Plaintiff attacks the officer's credibility, the Court avoids making any credibility determination.

*Matsushita*, 475 U.S. at 587.

Next, after receiving these commands, Mr. Eguino-Alcala quickly twisted to his left and brought his right hand upward. This caused Deputy Ortega to fear he was going to be shot. **Doc. 34 at 5–6, ¶ 20**. The dash-cam video easily undercuts Plaintiff's attempts to create a dispute on this fact (**Doc. 34-4 at 80–92**). Plaintiff's challenge to Fact 20 on this basis is unsuccessful.

Officer Jason Hayes' arrival on-scene the moment before Deputy Ortega shot Mr. Eguino-Alcala is not disputed. **Doc. 34 at 6, ¶ 21; Doc. 46 at 9, ¶ RMF 21**. After the shooting, officers discovered that Mr. Eguino-Alcala was not armed. **Doc. 34 at 6, ¶ 22**. Plaintiff disputes that Deputy Ortega "discovered" Mr. Eguino-Alcala was unarmed after the shooting, but only offered a conclusory opinion or allegation unsupported by specific facts (**Doc. 46 at 9, ¶ RMF 22**). *See Argo*, 452 F.3d at 1199. Plaintiff offers no evidence showing that Deputy Ortega knew Mr. Eguino-Alcala was unarmed. As explained in UMF ¶ 4, there were multiple reports that Mr. Eguino-Alcala was armed. No facts have been offered to show that Deputy Ortega knew Mr. Eguino-Alcala was not in possession of the originally reported firearm (or that he knew Mr. Eguino-Alcala did not have a different firearm on his person). This fact is, therefore, undisputed.

Plaintiff does not dispute that there is a church, several houses, and a business on Manso. **Doc. 34 at 6, ¶ 23; Doc. 46 at 10, ¶ RMF 23**. Plaintiff does not dispute the material fact that Sheriff Stewart did not make the decision to hire Deputy Ortega (nor did she supervise or train him). **Doc. 34 at 6, ¶ 24; Doc. 46 at 10, ¶ RMF 24**. Although Plaintiff affirmatively states that she had "an obligation to supervise and train deputies," Defendants fact only asserts she did not "directly" train or supervise Deputy Ortega. **Doc. 57 at 8, ¶ 18**. This is not a disputed material fact.

## DISCUSSION

"Even defendants who violate constitutional rights enjoy a qualified immunity that protects

them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer*, 468 U.S. 183, 190 (1984). Accordingly, a valid Fourth Amendment excessive-force claim requires a plaintiff to show "both that a seizure occurred and that the seizure was unreasonable." *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (internal quotation marks omitted). Because Mr. Eguino-Alcala was shot, there is no question a seizure occurred. *See Torres v. Madrid*, 141 S. Ct. 989, 994 (2021). The Court, therefore, turns to the question whether the seizure was unreasonable.

Plaintiff responds to this heavy burden by declaring that "Deputy Ortega violated [Mr. Eguino-Alcala's] Fourth Amendment rights by shooting him to death without a reasonable basis to believe [he] was armed or dangerous." **Doc. 46 at 17**. If supported by the undisputed material facts, this is true. But here, however, this is a conclusory, generalized assertion that the Supreme Court "has repeatedly told courts" cannot govern qualified immunity cases. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City & Cnty. Of San Francisco v. Sheehan*, 575 U.S. 600, 612–13 (2015).

Plaintiff's response is largely an attempt to characterize the facts, not contest them. Contrary to Plaintiff's argument, there are no disputed material facts regarding "(1) what information Defendant Ortega had leading up to the shooting, (2) what [Mr. Eguino-Alcala] was doing between when he stopped on Manso Street and when Defendant Ortega shot him to death, and (3) when Defendant Ortega began shooting [Mr. Eguino-Alcala]." **Doc. 46 at 17–18**.

Despite arguing the information Deputy Ortega knew is disputed, Plaintiff did not dispute numerous dispatch reports that said Mr. Eguino-Alcala had a gun. In fact, Plaintiff acknowledges that Deputy Ortega received a report regarding a suspect seen with a rifle. **Doc. 46 at 2, ¶ RMF 4**. As for what Mr. Eguino-Alcala was doing: Plaintiff does not dispute that his hand was "near his

waistband." **Doc. 34 at 5, ¶ 19**; **Doc. 46 at 7, ¶ RMF 19**. And finally, it is undisputed that Deputy Ortega shot Mr. Eguino-Alcala when he twisted and brought his right hand upward. **Doc. 34 at 5–6, ¶ 20**. The dash-cam video from Officer Hayes' vehicle makes this abundantly clear. **Doc. 34-4 at 80–92**.

Like the Appellant in *Larsen*, the Plaintiff here argues that the Deputy Ortega's inconsistent testimony about the circumstances of the shooting and the distance separating them is subject to dispute. *Est. of Larsen*, 511 F.3d at 1261. But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48)). For this reason, the Plaintiff's argument fails. First, the undisputed evidence showed that Deputy Ortega was faced with a suspect who brandished a weapon, battered multiple members of the public, received repeated police commands, and made sudden movements. *See Est. of Larsen*, 511 F.3d at 1263. Second, even assuming the distance between Mr. Eguino-Alcala and Deputy Ortega was 30 feet, such a discrepancy in distance is immaterial when the suspect has a gun versus a knife. *See Tenorio*, 802 F.3d at 1165–66; *Zuchel*, 997 F.2d at 735–37; *Walker*, 451 F.3d at 1160. And finally, even if an officer mistakenly (but reasonably) believed a suspect "was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). It is well established that a reasonable officer "need not await the 'glint of steel' before taking self-protective action." *Est. of Larsen*, 511 F.3d at 1260 (quoting *People v. Morales*, 603 N.Y.S.2d 319, 320 (N.Y. App. Div. 1993).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v.*

11

*Connor*, 490 U.S. 386, 396 (1989).

**I. Defendants are entitled to qualified immunity on the excessive force claim in Count IV**

Plaintiff asserts that "an officer, even when responding to a dangerous reported situation, may not shoot an unarmed and unthreatening suspect." *Finch v. Rapp*, 38 F.4th 1234, 1243 (10th Cir. 2022). This is true. But this case does not involve a shooting of an unarmed ***and*** unthreatening suspect. For that reason, courts rely on a variety of factors to determine if the use of force was reasonable or excessive.

The United States Supreme Court has instructed that claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its objective reasonableness standard. *Graham*, 490 U.S. at 388. Specifically, the question a court considers in excessive force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Courts must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. For this reason, courts analyze reasonableness from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014). Under this totality of the circumstances approach, a court should consider the following factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396 (quotations omitted).

Here, Defendants seek partial summary judgment based on qualified immunity on the

Plaintiff's excessive force claim brought under § 1983. When analyzing the affirmative defense of qualified immunity, we first ask if a Plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a Defendant's actions. *See Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Because the public officials have raised a qualified immunity defense, the Plaintiff bears the burden of proving that the Defendants' conduct violated the law *and* that the relevant law was clearly established when the alleged violation occurred. *Clanton*, 129 F.3d at 1153 (citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)).

The Court will now turn to examining the *Graham* factors as they apply to the instant case (comparing, of course, the factual similarities and dissimilarities to other cases). *See generally Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022); *Weigel v. Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008).

**A. The first *Graham* factor: Mr. Eguino-Alcala's crimes were severe**

The Court weighs the first *Graham* factor in favor of the Defendants. Mr. Eguino-Alcala was suspected of having brandished a firearm at bystanders and attempting to steal several vehicles (**Doc. 34 at ¶¶ 4 & 15; Doc. 46 ¶¶ 4 & 15**). Despite Plaintiff's contention that Deputy Ortega had no basis to believe any crime was committed (let alone a severe one)—the undisputed material facts show otherwise. It is without question that Mr. Eguino-Alcala pulled a rifle out of his vehicle, pointed the weapon at the crowd, and that dispatch reported this information to law enforcement. **Doc. 34 at 3, ¶¶ 1–4; Doc. 46 at 2**. The Court notes the obvious seriousness of these actions.

For the Court's analysis, it does not matter if Mr. Eguino-Alcala was reported to have committed a felony or misdemeanor assault. *Andersen v. Delcore*, No. 22-1130, 2023 U.S. App.

13

LEXIS 21674, at *14–15 (10th Cir. Aug. 18, 2023) (explaining the use of force analysis is not based solely on a misdemeanor versus felony analysis). What helps guide this first factor is the "reasons why the officers initiated an encounter." *Id.* at *15. Here, the fact Mr. Eguino-Alcala was seen brandishing a firearm at a crowd and then fleeing the scene of an accident informed law enforcement's response. Moreover, Plaintiff concedes that Mr. Eguino-Alcala had his hand near his waistband and the dash-cam video proves he made a sudden movement (**Doc. 34 at 5, ¶ 19; Doc. 34-4 at 80–92; Doc. 46 at 7, ¶ RMF 19**). Given these facts, the severity of Mr. Eguino-Alcala's suspected crimes—and what a reasonable officer would have believed under the same circumstances—weighs against finding the use of force was unreasonable.

The Court comes to this conclusion even if Mr. Eguino-Alcala was suspected of only misdemeanor assault—given the underlying fact that a firearm (or "10-80") was involved in the commission of the assault. It is insignificant if the individual is suspected of a felony, misdemeanor, or not even a criminal suspect if "it reasonably appeared he was about to shoot a gun at an officer from close range." *Est. of Valverde*, 967 F.3d at 1061.

**B. The second *Graham* factor: Deputy Ortega reasonably perceived an immediate and lethal threat**

Although none of the *Graham* factors are dispositive, the Tenth Circuit has stated the second fact is "undoubtedly the 'most important' and fact intensive." *Arnold*, 35 F.4th at 788 (citation omitted). This is particularly true when "the issue is whether an officer reasonably believed [they] faced a threat of serious physical harm." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 792 (10th Cir. 2021) (quoting *Est. of Valverde*, 967 F.3d at 1061). The Tenth Circuit looks at four criteria to inform the second *Graham* factor, namely: (1) whether officers ordered the suspect to drop the weapon, (2) whether any hostile motions were made with the weapon towards the officers, (3) the distance separating the officers and the suspect, and (4) the manifest intentions

of the suspect. *Est. of Larsen*, 511 F.3d at 1260.

In evaluating the *Larsen* factors, the Court notes that it is undisputed Deputy Ortega ordered Mr. Eguino-Alcala to "put [his] hands up" and "get on the ground." **Doc. 46 at 7, ¶ RMF 18; Doc. 57 at 7, ¶ 11**. It is also undisputed that Mr. Eguino-Alcala had pointed a weapon at a crowd mere minutes prior. In fact, Deputy Ortega first saw Mr. Eguino-Alcala as he was attempting to pull the driver of an ambulance from the vehicle. **Doc. 34 at 5, ¶ 15**. Additionally, Mr. Eguino-Alcala's hand was near his waistband prior to making a sudden movement. **Doc. 34 at 5, ¶ 19; Doc. 34-4 at 80–92; Doc. 46 at 7, ¶ RMF 19**.

The third *Larsen* factor warrants further discussion. Even assuming the distance was 30 feet, this is but one fact in a non-exhaustive list of assessing the degree of threat facing an officer. *Est. of Larsen*, 511 F.3d at 1260. Of note, the Tenth Circuit has clearly established that a discrepancy in distance between 10 and 30 feet is immaterial when the suspect has a gun versus a knife. *See Tenorio*, 802 F.3d at 1165–66; *Zuchel*, 997 F.2d at 735–37; *Walker*, 451 F.3d at 1160. The Court is not in a position to "second-guess[]" police judgments. *Cortez v. McCauley*, 478 F.3d 1108, 1138 (10th Cir. 2007) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Despite the (immaterial) uncertainty of the distance, the undisputed facts show that Mr. Eguino-Alcala kept his hand near his waistband and made a sudden movement (**Doc. 34 at 5, ¶ 19**; **Doc. 46 at 7, ¶ RMF 19**). *See Est. of Larsen*, 511 F.3d at 1260. And he did so while not complying with Deputy Ortega's commands. **Doc. 34 at 5, ¶ 18; Doc. 46 at 7, ¶ RMF 18**. The fact a suspect is armed with a gun (which is "capable of harming someone from a much greater distance and with greater lethal potential" than other weapons) provides a "stronger justification" for a police shooting. *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1216 (10th Cir. 2019) (citing *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997)).

15

For this reason, Plaintiff's citation to numerous cases involving suspects that did not possess a firearm are unpersuasive. **Doc. 46 at 33**. This is not a just comparison. Multiple dispatch reports explained Mr. Eguino-Alcala had a firearm. These reports informed Deputy Ortega's actions (and would, likewise, inform the actions of any reasonable officer). These facts when combined with Mr. Eguino-Alcala's lack of compliance and quick upward movement created an immediate threat. This is particularly true because individuals who "carry weapons often keep them at their waistline." *United States v. Briggs*, 720 F.3d 1281, 1283 n.4 (10th Cir. 2013).

This conduct satisfies the second *Graham* factor (and *Larsen* subfactors) in proving the potential and immediate threat posed by Mr. Eguino-Alcala. *See Est. of Larsen*, 511 F.3d at 1260.

**C. The third *Graham* factor: Mr. Eguino-Alcala was evading (or attempting to evade) arrest at the time of the shooting**

Another factor in evaluating the reasonableness of an officer's use of force is whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. This review "looks at the facts and circumstances as they existed in the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020).

The final *Graham* factor is close—but weighs in favor of the Defendants. As addressed above, Mr. Eguino-Alcala initially fled the scene of the automobile accident before darting and running around the city of Las Cruces, New Mexico. **Doc. 34 at 3, ¶¶ 10–14; Doc. 46 at 6, ¶¶ RMF 10–14**. Even if a halfhearted attempt to evade law enforcement, Mr. Eguino-Alcala certainly did not immediately stop upon seeing the patrol vehicle. Such flight certainly warrants some use of force. *See Emmett*, 973 F.3d at 1136. Mr. Eguino-Alcala was no longer evading, running, or darting when Deputy Ortega drew his firearm. This compliance shifts the analysis back to the Plaintiff. But, moments later, Mr. Eguino-Alcala did not comply with Deputy Ortega's commands

to put his hands up and get on the ground. **Doc. 34 at 5, ¶ 18**; **Doc. 46 at 7, ¶ RMF 18**. The initial evasion coupled with Mr. Eguino-Alcala's failure to comply with commands justifies the use of force—tilting this third *Graham* factor in favor of the Defendants.

## II. There are no Supreme Court or Tenth Circuit Cases With Similar Facts Demonstrating a Clearly Established Constitutional Violation

This is far from an obvious case in which any competent officer would have known that shooting Mr. Eguino-Alcala would violate the Fourth Amendment. *Kisela*, 138 S. Ct. at 1153. To show clearly established law, the burden is on the Plaintiff "to identify a case where an officer acting under similar circumstances as [the Defendants] was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam). That being said, there is no requirement to "hunt for a prior case with identical facts." *Weigel*, 544 F.3d at 1154.

However, the Tenth Circuit affirmed a motion for summary judgment based on qualified immunity under similar circumstances. *Est. of Taylor*, 16 F.4th 744. Here, like in *Taylor*, even if there was a "low-level" crime and a lack of "a reasonable basis to arrest [the suspect]," the calculous shifts when an officer fears an "actual and imminent" threat. *Id.* at 764. Accordingly, Plaintiff's contention that Mr. Eguino-Alcala "was unarmed," does not answer the question of whether Deputy Ortega violated his constitutional rights. *Id*. The "salient question is whether [Deputy Ortega's] mistaken perceptions that [Mr. Eguino-Alcala] was [about to use a firearm] were reasonable." *Id.* (quoting *Est. of Smart*, 951 F.3d at 1170–71). Such a determination is made by considering "the totality of the circumstances from the perspective of a reasonable officer." *Id.* at 765 (citing *Reavis v. Frost*, 967 F.3d 978 (10th Cir. 2020)). The Court concludes that Deputy Ortega acted reasonably—even if he had "a mistaken belief as to the facts establishing the existence of exigent circumstances." *Est. of Smart*, 951 F.3d at 1171 (quoting *Thomas*, 607 F.3d at 666).

Deputy Ortega is entitled to qualified immunity "[e]ven if [he] misperceived [the suspect's] defensive movements as aggressive." *Bond*, 981 F.3d at 822. The Court is not in the business of "Monday morning quarterbacking" what is reasonable for an officer in a dynamic situation. *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011).

Plaintiff relies on cases in which the Tenth Circuit found a constitutional violation when officers employed deadly force against a person who posed no threat. This is clearly established law. But none of the cases cited by the Plaintiff involve the use of lethal force when a suspect (who previously brandished a firearm at a crowd) fled the scene of an accident, ran through a city evading a police vehicle, and later kept his hand hidden at or near his waistband before making a sudden movement. As such, none of these cases[5] are sufficiently on-point.

## CONCLUSION

Section 1983 provides no remedies "for unprofessional or negligent conduct." *Contreras v. Doña Ana Cnty. Bd. Of Cnty. Comm'rs*, 965 F.3d 1114, 1123 (10th Cir. 2020) (Carson, J., concurring). Plaintiff may only recover if Defendants violated a clearly established constitutional right. Here, the Plaintiff cannot show that the Defendants violated clearly established law. *Aldaba*, 844 F.3d at 877. In the final analysis, the officer's use of force was reasonable given the totality of the circumstances under *Graham* and *Larsen*.

**IT IS THEREFORE ORDERED** that Defendants' Amended Motion and Memorandum in Support of Partial Summary Judgment and Qualified Immunity Against Counts I, II, and IV

---

[5] *See generally Finch v. Rapp*, 38 F.4th 1234 (10th Cir. 2022) (upholding denial of summary judgment when the officer could see the suspects hands were empty); *Emmett v. Armstrong*, 973 F.3d 1127 (10th Cir. 2020) (explaining an officer who used a taser on a cooperative and subdued suspect without warning was excessive force); *Zia Trust Co. ex. rel. Causey v. Montoya*, 597 F.3d 1150 (10th Cir. 2010) (determining an officer was not entitled to qualified immunity when he exited his patrol vehicle with his weapon drawn, failed to identify himself as a police officer, and shot an unarmed man sitting in a vehicle); *see also supra* ¶ I.B (citing cases explaining the Tenth Circuit has frequently decided a suspect possessing a firearm is more dangerous than a suspect wielding a knife).

**(Doc. 34)**, is **GRANTED** in part to Defendants on Count IV (§ 1983 claim), and this claim is **DISMISSED** WITH PREJUDICE for the above described reasons.

_____
CHIEF UNITED STATES DISTRICT JUDGE